POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA SPURBECK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PETCO HEALTH AND WELLNESS COMPANY, INC., JOEL D. ANDERSON, R. MICHAEL MOHAN, RONALD V. COUGHLIN, JR., SABRINA SIMMONS, BRIAN LAROSE, and MICHAEL NUZZO,<br><br>Defendants. | Case No. <u>'25CV1667 BEN VET</u><br><br><u>CLASS ACTION</u><br><br><u>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Joshua Spurbeck ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Petco Health and Wellness Company, Inc. ("Petco" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Petco securities between January 14, 2021 and June 5, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Petco is a specialty retailer that offers a variety of pet products, services, and solutions, including consumable and non-consumable products via physical and digital stores and in-store veterinary and grooming services.  One of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Petco's key business metrics is comparable sales—also referred to as same-store sales or "comp"—which measures the change in period-over-period net sales from physical locations and digital sites that have been open for the applicable period.

3.      In the wake of the COVID-19 pandemic, Petco consistently touted the benefits of pandemic-related tailwinds on its growth and profitability, including comparable sales growth, as a result of increased rates of pet adoption, while also touting the purported sustainability of these tailwinds post-pandemic. Additionally, at all relevant times, Petco consistently touted its transformation from a general pet retailer into a more health-focused pet company—particularly its ability to capitalize on ongoing purported "pet humanization" and "premiumization" trends. According to Petco, these trends were driven by an increase in younger, more health-conscious consumers becoming pet owners, who were purportedly more prone to treat pets more like humans than property and, accordingly, invest more in healthy, premium pet products. Petco represented that it was uniquely positioned to capitalize on the foregoing trends and drive sustainable, profitable growth based on its purported differentiated business strategy centered around, *inter alia*, healthy, premium pet foods containing no artificial ingredients.

4.      However, contrary to Petco's representations, as pandemic-related tailwinds eventually abated, the Company's sales and profitability metrics began to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

plummet. Specifically, as early as mid-2023, the Company's financial performance took a notable turn for the worse.

5.      Notwithstanding the foregoing, Defendants continued to represent that Petco's business model centered around, *inter alia*, healthy and/or premium pet food products remained a viable and sustainable business strategy. For example, in March 2023, Petco issued financial guidance for its fiscal full year ("FY")[1] 2023, including adjusted earnings before interest, taxes, depreciation and amortization ("EBITDA") of $520 million to $540 million and adjusted earnings per share ("EPS") of $0.40 to $0.48. Despite the Company's worsening financial condition, Defendants reaffirmed this guidance in May 2023.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding Petco's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Petco's pandemic-related tailwinds were unsustainable, as was its business model of selling primarily premium and/or high-grade pet food; (ii) accordingly, the strength of Petco's differentiated product strategy was overstated; (iii) Defendants downplayed the true scope and severity of the foregoing issues, the magnitude of changes needed to rectify those issues, and the likely negative impacts

---

[1] Petco's fiscal FY ends on various dates between the end of January and beginning of February.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

of their mitigation strategy on Petco's comparable sales metric; (iv) accordingly, Defendants overstated Petco's ability to deliver sustainable, profitable growth; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

7.      On August 24, 2023, Petco issued a press release announcing its financial results for the second quarter of its FY 2023.  Therein, the Company negatively revised its FY 2023 adjusted EBITDA guidance to a range of $460 million to $480 million—down significantly from its prior guidance of $520 million to $540 million—and adjusted EPS guidance to a range of $0.24 to $0.30—down significantly from its prior guidance of $0.40 to $0.48.  In explaining the negatively revised guidance, Company management cited a "shift in consumer spending and pressures on our discretionary business[.]"

8.      On this news, Petco's stock price fell $1.35 per share, or 20.64%, to close at $5.19 per share on August 24, 2023.

9.      On November 29, 2023, Petco issued a press release announcing its financial results for the third quarter of its FY 2023.  Therein, the Company again negatively revised its fiscal FY 2023 adjusted EBITDA guidance to approximately $400 million—down significantly from its prior guidance of $460 million to $480 million—and adjusted EPS guidance to approximately $0.08—down significantly from its prior guidance of $0.24 to $0.30.      In the same press release, Company

management revealed that Petco had broadened its product offerings to include "value"—*i.e.*, cheaper, lower-quality—pet food brands in an effort to improve sales.

10.    On this news, Petco's stock price fell $1.11 per share, or 28.91%, to close at $2.73 per share on November 29, 2023.

11.    On March 13, 2024, Petco issued a press release announcing that Defendant Ronald V. Coughlin, Jr. ("Coughlin") had stepped down as Petco's Chief Executive Officer ("CEO"), Chairman, and member of the Company's Board of Directors (the "Board").

12.    The same day, Petco issued another press release announcing its financial results for its fiscal fourth quarter and FY 2023, reporting, *inter alia*, that "[c]omparable sales declined 0.9 percent year over year" in the quarter, as well as a "GAAP net loss of $1.3 billion, or $(4.78) per share, which includes goodwill impairment of $1.2B[.]"  On a subsequent investor conference call held the same day, Company management acknowledged that Petco's business model focused on premium products was, in fact, ***not*** sustainable as it could not weather ongoing consumer preference trends towards cheaper goods for their pets.

13.    Following these disclosures, Petco's stock price fell $0.50 per share, or 19.53%, over the following two trading sessions, to close at $2.06 per share on March 14, 2024.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

14.   On April 9, 2024, Petco filed a current report on Form 8-K with the SEC, disclosing that the Company's Board "approved the termination of employment of Darren MacDonald, the Company's Chief Customer Officer, effective as of April 12, 2024[.]"

15.   On this news, Petco's stock price fell $0.04 per share, or 2.12%, to close at $1.85 per share on April 10, 2024.

16.   On May 28, 2024, Petco issued a press release announcing further "changes to [its] leadership team [to] accelerate Petco's initiatives to drive retail excellence as we execute on our operational reset," including the departures of the Company's Chief Operating and Chief Merchandising and Supply Chain Officers.

17.   On this news, Petco's stock price fell $0.29 per share, or 8.48%, to close at $3.13 per share on May 29, 2024.

18.   On February 18, 2025, Petco issued a press release announcing that its then-Chief Financial Officer ("CFO") Defendant Brian LaRose ("LaRose") had stepped down from this role.

19.   On this news, Petco's stock price fell $0.04 per share, or 1.27%, to close at $3.10 per share on February 19, 2025.

20.   Then, on June 5, 2025, Petco issued a press release announcing its financial results for the first quarter of its FY 2025, including, *inter alia*, a 1.3% year-over-year ("Y/Y") decline in comparable sales—much larger than the 0.6%

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

decline estimated by Wall Street.  Multiple analysts also expressed concerns with Petco's diminishing comparable sales and market share in the wake of Defendants' profitability-focused turnaround plan.

21.    On this news, Petco's stock price fell $0.84 per share, or 23.2%, to close at $2.78 per share on June 6, 2025.

22.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

23.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

24.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

25.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Petco is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

26.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

27.    Plaintiff, as set forth in the attached Certification, acquired Petco securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

28.    Defendant Petco is a Delaware corporation with principal executive offices located at 10850 Via Frontera, San Diego, California 92127.    The Company's Class A common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "WOOF."

29.    Defendant Joel D. Anderson ("Anderson") has served as Petco's CEO since July 29, 2024.

30.    Defendant R. Michael Mohan ("Mohan") served as Petco's interim CEO from March 13, 2024 to July 29, 2024.  Defendant Mohan currently serves on the Company's Board.

31.    Defendant Coughlin served as Petco's CEO from before the start of the Class Period to March 13, 2024.

32.    Defendant Sabrina Simmons ("Simmons") has served as Petco's CFO since February 17, 2025, before which she served on the Company's Board at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

33.    Defendant LaRose served as Petco's CFO from August 19, 2021 to February 17, 2025.

34.    Defendant Michael Nuzzo ("Nuzzo") served as Petco's CFO from before the start of the Class Period to August 19, 2021.

35.    Defendants Anderson, Mohan, Coughlin, Simmons, LaRose, and Nuzzo are collectively referred to herein as the "Individual Defendants."

36.    The Individual Defendants possessed the power and authority to control the contents of Petco's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Petco's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Petco, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

37.    Petco and the Individual Defendants are collectively referred to herein as "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

## Background

38.    Petco is a specialty retailer that offers a variety of pet products, services, and solutions, including consumable and non-consumable products via physical and digital stores and in-store veterinary and grooming services.

39.    One of Petco's key business metrics is comparable sales—also referred to as same-store sales or "comp"—which measures the change in period-over-period net sales from physical locations and digital sites that have been open for the applicable period.  According to Petco, it uses the comparable sales metric to evaluate how its overall ecosystem is performing, including insights on factors such as customer retention, frequency of visits, and basket size—*i.e.*, the number of items a customer purchases per visit.

40.    On December 3, 2020, Petco filed a registration statement (the "Registration Statement") on Form S-1 with the SEC in connection with its initial public offering ("IPO"), which, after several amendments, was declared effective by the SEC on January 13, 2021.

41.    On January 15, 2021, Petco filed a prospectus (the "Prospectus") on Form 424B4 with the SEC in connection with its IPO, which incorporated and formed part of the Registration Statement (the "Offering Documents").

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

42.    Prior to and following its IPO, Petco consistently touted its accelerated growth and profitability in the wake of the COVID-19 pandemic, as well as the purported sustainability of pandemic-related tailwinds on its business—including its comparable sales growth.  According to the Company, as the general population spent more time at home, more consumers were adopting and spending time with pets, which represented a long-term investment in pet care and goods.

43.    Likewise, leading up to Petco's IPO, Defendants touted the Company's transformation from a general pet retailer into a more health-focused pet company.  Defendants represented that as younger, more health-conscious consumers became pet owners, the pet industry in general was facing enormous purported "pet humanization" and "premiumization" trends—namely, treating pets more like humans than property, which in turn led to more health-conscious decisions for pets in terms of their food products and overall well-being.

44.    Petco represented that it was uniquely positioned to capitalize on the foregoing trends and drive sustainable, profitable growth based on its purported differentiated business strategy centered around, *inter alia*, healthy, premium pet foods containing no artificial ingredients.  Indeed, in 2018, Petco had announced its commitment to stop selling all dog and cat foods that contain artificial ingredients, which purportedly solidified the Company's nutrition leadership in the industry and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

drove partnerships with premium, exclusive brands that are typically only found in specialty channels.

45.     However, contrary to Petco's representations, as pandemic-related tailwinds eventually abated, the Company's sales and profitability metrics began to plummet.  Notwithstanding the foregoing, Defendants continued to represent that the Company's business model centered around, *inter alia*, healthy and/or premium pet food products remained a viable and sustainable business strategy.

**Materially False and Misleading Statements Issued During the Class Period**

46.     The Class Period begins on January 14, 2021, when Petco's Class A common stock began publicly trading on the NASDAQ pursuant to the materially false and misleading statements and omissions in the Offering Documents.  The Offering Documents contained a letter from Defendant Coughlin, which stated, in relevant part:

> [O]ur business transformation has focused on driving a differentiated merchandise strategy, building sticky services, and completely revamping our digital offerings . . . . [O]ur current focus areas have generated attractive top- and bottom-line growth and position us for compelling long-term growth and profitability.
>
> \* \* \*
>
> Suffice it to say, our business was strong before the pandemic, accelerated during the pandemic, and we expect it to continue to grow at an accelerated rate long after the pandemic passes.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

47.     Similarly, in discussing Petco's purported competitive strengths, the Offering Documents stated, *inter alia*:

> Our product strategy is built around an extensive offering that features premium owned and partner brands known for quality and innovation.
>
> * * *
>
> Over the last three years, we have demonstrated the speed and depth of our innovation platform through the launch of 89 new brands and 5,000 new products. In 2016, we launched our first major proprietary pet food brand, WholeHearted, which features a premium ingredient panel, an attractive price point, quality packaging, and authentic branding that effectively targets millennial pet parents . . . . We also believe our Well & Good brand has similar potential to tap into customer demand for premium wellness products. Sales of our owned brand portfolio have grown at a 14% CAGR [compound annual growth rate] between Fiscal 2017 and Fiscal 2019, and for Fiscal 2019, our owned brands generated sales of $1.1 billion, or approximately 27% of total product sales, up from 17% of product sales in Fiscal 2015.

48.     On March 18, 2021, Petco issued a press release announcing its fiscal fourth quarter ("Q4") and FY 2020 financial results.  The press release quoted Defendant Coughlin as stating, in relevant part:

> On the heels of a successful IPO in January, we closed the year with a strong fourth quarter, and that momentum has carried into 2021 . . . . Our comprehensive petcare ecosystem focused on health and wellness, coupled with our digitally-led, multichannel experience is resonating with pet parents and generating significant competitive advantages that are evident in our performance.  Our category continues to grow powered by the millions of incremental new pets in households, which is creating an annuity for years to come . . . . Petco [is] well positioned for long-term growth.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

49.    The same press release also represented that "[f]iscal 2020 revenue and comp[arable] sales both grew 11%, reflecting [the] continued success of Petco's transformation into an omnichannel Health and Wellness provider[.]"

50.    Also on March 18, 2021, Petco hosted a conference call with investors and analysts to discuss its fiscal Q4 and FY 2020 results.  Therein, Defendant Coughlin represented that Petco's transformation into a health-focused products company would drive sustainable growth for years, even after the abatement of pandemic-related tailwinds, stating, *inter alia*:

> [W]hile the COVID environment has definitely provided a strong industry tailwind, looking forward, the millions of incremental new pets-oriented homes in the past 12 months, generated a predictable head spend annuity for years to come.

> And coupled with premiumization and humanization trends, the stickiness of a multi-channel customer relationships, we see strong growth long into the future.

> * * *

> Our transformation has delivered nine consecutive quarters of growth. In particular, we had momentum going into 2020 with strong top line performance. That performance accelerated through the pandemic and we're on an exciting growth trajectory even as COVID restrictions relax.

51.    With respect to the purported competitive strengths provided by Petco's differentiated health- and premium-focused pet food products, Defendant Coughlin stated, in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Our own brands and exclusive merchandise deepen our competitive moats and power our growth. Our team has demonstrated the ability to build brands and products that resonate with customers. In both Q4 and full year 2020, our own brands drove double digit growth and are rapidly approaching 30% penetration, further fortifying our differentiation from our competitors.

Our food brand WholeHearted, which we launched in 2016 is now a top three offering while our premium supplies brand Ready, grew almost 90% with aggressive expansion plans ahead. Complementing our own brand offering we also have exclusive partnerships for unique products. We're particularly excited about fresh foods projected to more than quadruple into a multi-billion-dollar category over the next several years according to industry forecasts.

We're focused on becoming a market maker in Fresh in 2021 are said to more than double are just food for dogs distribution, while our recent launch of premium price human grade on its kitchen has broken all our previous initial sales records. Overall, our own brands and brands exist to Petco in specific markets represent over half our portfolio not only enhancing our gross margin, but also creating competitive insulation.

52.     On April 5, 2021, Petco filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal Q4 and FY ended January 30, 2021 (the "2020 10-K").  The 2020 10-K stated, *inter alia*:

We offer a highly differentiated owned and exclusive product assortment that engenders strong customer loyalty. We focused on three core product differentiating capabilities: nutritional expertise, exclusive partnerships, and a leading owned brand platform. As a testament to our commitment to pet health and wellness, in May 2019 we made the decision to pivot away from dog and cat food and treats that contain artificial ingredients making us the only major national retailer in the industry to take a stand against artificial ingredients in dog and cat food. We utilized a best brands strategy to form new partnerships with some of the most highly regarded premium food brands in the industry, such as Just Food For Dogs.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

53.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Coughlin and Nuzzo certified, in relevant part, that the 2020 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

54.     On March 8, 2022, Petco issued a press release announcing its fiscal Q4 and FY 2021 financial results, which quoted Defendant Coughlin as stating, in relevant part:

> Our results for the quarter and full year demonstrate that our focus on long-term, sustainable growth, powered by continued delivery against our strategic growth opportunities, is working . . . . We enter this fiscal year as a stronger company than ever. Our category remains strong and resilient; our competitive moats are deepening, and our world-class team is executing to deliver purpose driven performance . . . . [W]e're well positioned to drive enhanced long-term shareholder value.

55.     The same day, Petco hosted a conference call with investors and analysts to discuss its fiscal Q4 and FY 2021 results.  During that call, Defendant Coughlin represented, in relevant part:

> One of the great things about pet is it's relatively immune to macroeconomic trends. Premiumization has been a multiyear trend. And even today, we're seeing its continuation in this environment. The best example of that is fresh frozen, where we have a higher ring, higher frequency and where we see outsized growth and by the way, better trip frequency.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

In the higher end customer where we sit, we see pricing is relatively inelastic. And the other thing we've talked about before is 70% of our product is either owned, exclusive or covered by that. So our exposure to pricing is less than most other businesses. And . . . we haven't seen a decline in unit volumes.

56.     On March 24, 2022, Petco filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal Q4 and FY ended January 29, 2022 (the "2021 10-K"). The 2021 10-K stated, *inter alia*:

Our product offering leverages a broad, carefully curated assortment of owned and exclusive merchandise and partnerships with premium third-party brands to provide customers with high quality nutrition without artificial ingredients, complemented by a wide variety of premium pet care supplies and companion animals. While we offer pet parents a full spectrum of product choices within our high standards of nutrition and quality, our assortment is weighted towards premium products to address the needs of the growing number of health-conscious pet parents.

* * *

As pet care demand continues to grow, we believe we are well-positioned to expand our total addressable market through new offerings, and to capture an outsized portion of the growing market as a fully-integrated, comprehensive pet care provider. Our owned and exclusive merchandise is unique relative to other large players in the category, driving competitive insulation and focusing on the highest growth categories within the pet industry, like fresh and frozen, as well as premium nutrition and supplies more broadly.

* * *

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

We believe that we have built deep competitive "moats" through the breadth and depth of assortment of premium health and wellness products[.]

57.    Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 53, *supra*, signed by Defendants Coughlin and LaRose.

58.    On March 22, 2023, Petco issued a press release announcing its fiscal Q4 and FY 2022 financial results.  The press release quoted Defendant Coughlin as stating, in relevant part:

> Record fourth quarter sales, with cash flow exceeding expectations, rounded out a solid fiscal year, once again demonstrating the enduring strength of the pet category and Petco's ability to grow through economic cycles . . . . As we look ahead, the pet category remains resilient and growing, and we'll continue to execute day-in and day-out while we progress our differentiated long-term growth strategy.

59.    The same day, Petco hosted a conference call with investors and analysts to discuss its fiscal Q4 and FY 2022 results.  During the call, Defendant Coughlin continued to represent that Petco's focus on premium food products was continuing to secure the Company's competitive position and drive sustainable sales and growth, stating, *inter alia*:

> Turning to our differentiated merchandise, 2022 was another strong year. The addition of exclusive and formally independent only store brands such as Backcountry and Stella & Chewy's, have been powerful in driving our premium mix and accessing new customers. Meanwhile, our mix of popular own brand supplies and consumables including Reddy and WholeHearted, which both grew in revenue and penetration over the year, continue to meet the core humanization trend, while also

19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

catering to a variety of wallet sizes. Taken as a whole, our differentiated assortment is driving retention with our health-focused customers offering products unavailable in mass or many online channels and reducing our competitive promotional exposure.

\* \* \*

With the Fresh Frozen pet category expected to reach $6 billion within the next four years, and the direct-to-consumer pet segment growing faster than traditional pet e-commerce. These custom meals further enhance Petco's ability to lead the way in the megatrends of personalization and humanization.

60.     During the same call, Defendant LaRose provided financial guidance for Petco's FY 2023, including, *inter alia*, adjusted EBITDA of $520 million to $540 million and adjusted EPS of $0.40 to $0.48.

61.     On March 28, 2023, Petco filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal Q4 and FY ended January 28, 2023 (the "2022 10-K").  The 2022 10-K contained substantively the same statements as referenced in ¶ 56, *supra*, regarding Petco's purported ability to continue to capture market share and strengthen its competitive position by focusing on premium and healthy pet food products.

62.     Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 53, *supra*, signed by Defendants Coughlin and LaRose.

63.     The statements referenced in ¶¶ 46-62 were materially false and misleading because Defendants made false and/or misleading statements, as well as

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

failed to disclose material adverse facts about Petco's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Petco's pandemic-related tailwinds were unsustainable, as was its business model of selling primarily premium and/or high-grade pet food; (ii) accordingly, the strength of Petco's differentiated product strategy and ability to deliver sustainable, profitable growth was overstated; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

64.     On May 24, 2023, during pre-market hours, Petco hosted a conference call with investors and analysts to discuss its financial results for the first quarter of its FY 2023. Although the Company reaffirmed its financial guidance for fiscal FY 2023 during the call, Defendant Coughlin warned that "we're . . . seeing some value-seeking behaviors in our customer base"—*i.e.*, shifts to cheaper products—while reassuring investors that, "[f]or those customers, we saw a demand shift into our own brand offerings such as WholeHearted, providing pet parents with a value-oriented yet health-focused alternative that positions us well competitively."

65.     On this news, Petco's stock price fell $1.85 per share, or 18.17%, to close at $8.33 per share on May 24, 2023.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

66.    On August 24, 2023, during pre-market hours, Petco issued a press release announcing its second quarter ("Q2") 2023 financial results.  Therein, the Company negatively revised its FY 2023 adjusted EBITDA guidance to a range of $460 million to $480 million—down significantly from its prior guidance of $520 million to $540 million—and adjusted EPS guidance to a range of $0.24 to $0.30—down significantly from its prior guidance of $0.40 to $0.48.  In explaining the negatively revised guidance, Defendant LaRose, as quoted in the press release, cited a "shift in consumer spending and pressures on our discretionary business[.]"

67.    The same day, also during pre-market hours, Petco hosted a conference call with investors and analysts to discuss its fiscal Q2 2023 results.  During the call, Defendant Coughlin disclosed that "we . . . continue to see a bifurcation among pet parents, with ongoing migration to more premium foods on the one hand and an uptick in value seeking behaviors amongst the second cohort."

68.    On this news, Petco's stock price fell $1.35 per share, or 20.64%, to close at $5.19 per share on August 24, 2023.

69.    On November 29, 2023, Petco issued a press release announcing its third quarter ("Q3") 2023 financial results.  Therein, the Company again negatively revised its fiscal FY 2023 adjusted EBITDA guidance to approximately $400 million—down significantly from its prior guidance of $460 million to $480

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

million—and adjusted EPS guidance to approximately $0.08—down significantly from its prior guidance of $0.24 to $0.30.

70.     The same press release also revealed that Petco was broadening its product offerings to include "value"—*i.e.*, cheaper, lower-quality—pet food brands in an effort to improve sales, quoting Defendant Coughlin as stating:

> Our [Q3] results were below our expectations as we continue to navigate a challenging consumer environment and we are taking swift and decisive action to improve the performance of our business by broadening our appeal with customers and tightly managing costs and capital. This includes the introduction of the category's largest national cat and dog food value brands to meet the needs of all pet parents and deliver incremental profits over time[.]

71.     Also on November 29, 2023, during pre-market hours, Petco hosted a conference call with investors and analysts to discuss its Q3 2023 results (the "Q3 2023 Earnings Call").  During his opening remarks on the call, Defendant Coughlin provided additional color regarding the Company's decision to include cheaper, lower-quality brands in its pet food product offerings, stating, *inter alia*:

> Over the past years, we've seen significant changes that have impacted consumer spending. While we saw a surge in pet adoption during the pandemic period, coupled with stimulus that facilitated discretionary spending, the current economic environment means many consumers are increasingly discerning in their spending and actively seeking out more value. As a result, it's clear we must adapt our business to meet the needs of consumers in this environment. Consequently, we've launched an operational reset to improve the performance of our business, which is well underway and consists of four key pillars.
>
> The first and most significant is our focus on delivering value. We brought in the category's largest nationally available value brands in

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

food and treats for both dog and cat. These brands include Friskies, Pedigree, Purina 1, Beneful, Temptations, and Milkbone among others. These will complement our best-in-class premium in fresh frozen food, treats, and toppers, allowing us to cycle out slower-moving brands and skews and focus on the highest-velocity skews.

\* \* \*

While we remain committed to being a leader in the still rapidly growing premium, super premium, and fresh frozen categories, this is about choice. Bringing as many pets as possible into our health and wellness ecosystem. Whether chosen because of price sensitivity, brand preference, a picky eater, or a combination of these, we believe in the current environment it's important that no pet is excluded.

\* \* \*

Our team has acted fast. These brands are already on shelves, having been set in the first few weeks of November. This is in addition to Fancy Feast, where we began expanding our assortment in Q2.

72. Notably, Defendant Coughlin admitted that "the upfront costs and investment in labor and logistics to get these products on shelves has impacted near-term profitability[.]"

73. Nearly every analyst on the Q3 2023 Earnings Call expressed concern regarding Petco's shift in strategy to suddenly including cheaper, lower-margin pet food brands in its product portfolio. For example, during the question-and-answer ("Q&A") phase of the call, an Evercore ISI analyst noted that this represented "a big shift in focus" compared to "[d]uring the IPO [when] you always mentioned . . . premiumization and premium food" and questioned the attendant "margin impact." In response, Defendant LaRose admitted that "[t]he margin rates on these

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

products are lower than the average food margin of the rest of our chain[,]" but that Petco was making these changes to, *inter alia*, "get[] more customers[.]"

74.    In response to a Morgan Stanley analyst's inquiry regarding "what percentage of either the consumables business or the overall business did value brands represent" several years back "before you moved upstream with product," Defendant Coughlin was unable to provide an answer, but acknowledged that "[b]asically, since the second half of 2022 into 2023, we've seen strong double digit growth in the value brand."

75.    Similarly, a UBS analyst asked "[h]ow do you prevent this from becoming a race to the bottom" and if "the decision to add value brands [was] due to your perception that you're losing market share?"  In response, Defendant Coughlin cited the example of cats—whose product preferences can hardly be ascribed to shifting market trends—stating that "in many instances, you have finicky cats who only eat one brand or only one flavor, and we're now expanding to those brands, and it's a matter of meeting those needs."  Defendant Coughlin clarified that "50% of our services customers don't buy food from us" "[a]nd a lot of instances is because they have a cat who has a certain product or they're more value conscious."  Likewise, Defendant Coughlin stated that "[i]f you have double digit growth in the value products, that means customers are looking for those

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

products" and that "we want to participate in that growth, not only from a share standpoint as you cite, but also to build our baskets and do the attach."

76.    In response to additional analyst inquiries regarding Petco's sudden adoption of cheaper, lower-grade pet food products, Defendant LaRose admitted, *inter alia*, that the Company's focus on premium pet foods was failing as customers "shift[ed] . . . to [a] more value-seeking process -- products and the associated promotional and pricing environment related to those products" which "happened a bit faster than we anticipated" and represented "[t]he largest driver" of "the overall profit change in the guidance"; and that Petco was dealing with the negative impact of higher inventory levels, which "had increased as value product came in faster and at larger scale than we anticipated[.]"

77.    Following these disclosures, Petco's stock price fell $1.11 per share, or 28.91%, to close at $2.73 per share on November 29, 2023.

78.    Then, on March 13, 2024, during pre-market hours, Petco issued a press release announcing that Defendant "Coughlin has stepped down as Petco's [CEO], Chairman, and member of the Board" and that Defendant Mohan had been appointed Petco's interim CEO.

79.    The same day, during pre-market hours, Petco issued another press release announcing its fiscal Q4 and FY 2023 financial results.  Among other results, the press release reported that "[c]omparable sales declined 0.9 percent year

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

over year" in the quarter, as well as a "GAAP net loss of $1.3 billion, or $(4.78) per share, which includes goodwill impairment of $1.2B[.]"

80.    Also on March 13, 2024, during pre-market hours, Petco hosted a conference call with investors and analysts to discuss its fiscal Q4 and FY 2023 results (the "Q4/FY 2023 Earnings Call").  During the call, Defendant Mohan acknowledged that the Company's business model focused on premium and health-conscious products was, in fact, *not* sustainable as it could not withstand ongoing consumer preference trends towards cheaper goods for their pets.  Defendant Mohan also acknowledged that Defendants could not simply fix this issue by reintroducing lesser quality foods in the Company's product offerings.  In particular, Defendant Mohan stated, *inter alia*:

> I recognize, we have not been executing the way we need to, in a number of areas, to deliver on our full potential. Most critically, we have not adapted quickly enough, to recent changes in consumer preferences.

> * * *

> As a result, our in-store and omni-channel offering, was not appropriately aligned, with our customers' needs. This has led to two fundamental problems that, we need to address with speed. One, an erosion of market share as customers sought out alternatives, and two, a significant decline in profitability. Our work here, has already begun, with the reintroduction of value brands, in our consumable business, and adjusting our discretionary offering, to provide more balanced price points.

> But simply reintroducing these products into our assortment is not enough. This more balanced assortment, must be supported with

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

stronger retail and online customer experiences, and more disciplined execution. This starts with effective marketing to both existing, and potential customers. It builds with strong in-store and online merchandising. It is further supported by the education of Petco partners, to ensure they can effectively sell our complete offering.

And finally, it needs to be supported, by effective supply chain management that delivers inventory profitability with high-end stocks across our store base, and efficient delivery to omni-channel customers. Going beyond these critical near-term actions, we have to engage pet parents more effectively. We are focused on executing against high-quality, top-of-funnel customer acquisition and long-term retention, so more customers benefit, from the full Petco offering.

81.     Following the foregoing disclosures on March 13, 2024, Petco's stock price fell $0.50 per share, or 19.53%, over the following two trading sessions, to close at $2.06 per share on March 14, 2024.

82.     Despite the foregoing declines in Petco's stock price, the Company's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, Petco's ability to provide sustainable, profitable growth.

83.     For example, also during the Q4/FY 2023 Earnings Call, Defendant Mohan assured investors that "[i]mproving our customer experience, retail execution, and overall cost structure, will help us drive profit stabilization in the near-term, and growth in the medium and long-term[,]" without disclosing what, if any, anticipated negative impact such actions would have on the Company's comparable sales.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

84.    On April 3, 2024, Petco filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal Q4 and FY ended February 3, 2024 (the "2023 10-K").  The 2023 10-K stated, *inter alia*:

> The U.S. pet care industry is large, serving millions of households with pets, and has exhibited steady growth driven by an increase in the pet population and trends in pet humanization and premiumization. Due to the essential, repeat nature of pet care, the industry has demonstrated resilience across economic cycles. However, during fiscal 2023, we observed a softening in discretionary spend and shifting consumer preferences for more value-centric products associated with the current inflationary macroeconomic environment.  In response to this shifting demand, during fiscal 2023, we broadened our assortment to include more national brands and implemented strategic pricing actions to offer more balanced price points in an effort to appeal to a broader base of consumers.

85.    Appended as exhibits to the 2023 10-K were substantively the same SOX certifications as referenced in ¶ 53, *supra*, signed by Defendants Mohan and LaRose.

86.    The statements referenced in ¶¶ 83-85 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about Petco's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) they had downplayed the true scope and severity of issues with Petco's business model, the magnitude of changes needed to rectify those issues, and the likely negative impacts of their mitigation strategy on Petco's comparable sales metric; (ii) accordingly, Defendants overstated Petco's ability to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

deliver sustainable, profitable growth; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

87.    On April 9, 2024, during after-market hours, Petco filed a current report on Form 8-K with the SEC, disclosing that the Company's Board "approved the termination of employment of Darren MacDonald, the Company's Chief Customer Officer, effective as of April 12, 2024[.]"

88.    On this news, Petco's stock price fell $0.04 per share, or 2.12%, to close at $1.85 per share on April 10, 2024.

89.    On May 28, 2024, during after-market hours, Petco announced further "changes to [its] leadership team [to] accelerate Petco's initiatives to drive retail excellence as we execute on our operational reset," including the departures of the Company's Chief Operating and Chief Merchandising and Supply Chain Officers.

90.    On this news, Petco's stock price fell $0.29 per share, or 8.48%, to close at $3.13 per share on May 29, 2024.

91.    On February 18, 2025, during after-market hours, Petco announced that Defendant LaRose had stepped down from his role as CFO and that the Company's Board had appointed Defendant Simmons as the Company's new CFO.

92.    On this news, Petco's stock price fell $0.04 per share, or 1.27%, to close at $3.10 per share on February 19, 2025.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

93.    Despite the foregoing declines in Petco's stock price, the Company's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, Petco's ability to provide sustainable, profitable growth.

94.    For example, on March 26, 2025, Petco issued a press release announcing its fiscal Q4 and FY 2024 financial results.  The press release quoted Defendant Anderson as stating, in relevant part, that "[o]ur results in [Q4] demonstrate the progress we've made to return Petco to retail operating excellence" and "I am confident our new leadership team is well-positioned to . . . set the business up for sustainable profitable growth."

95.    Also on March 26, 2025, Petco hosted a conference call with investors and analysts to discuss its fiscal Q4 and FY 2024 results.  During his prepared remarks on the call, Defendant Anderson assured investors that Defendants had purportedly "made great progress" on correcting what he acknowledged was an inherently flawed business model and returning Petco to "sustainable, profitable growth[,]" stating, in relevant part:

> Let me now unpack in greater detail our long-term phased approach to delivering on Petco's full potential. Starting with Phase 1, which is well underway. Over the last six months, I have relentlessly focused on: one, improving the operating model; two, giving our stores a voice; and three, restoring our retail fundamentals. Quite frankly, our foundational practices were not those of a successful consumer business and needed overhauling. We have made great progress on all three and are

31

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

strengthening the foundation for Petco to return to sustainable, profitable growth.

96.    Likewise, Defendant Anderson stated, *inter alia*:

[W]e've conducted a detailed review of our product assortment, and our optimizing it to more closely align to consumer demand and preferences. Specifically, we are allocating more of our focus in shelf-space to top-selling brands and high velocity SKUs across categories. In addition, we're continuing to sharpen our approach to pricing and have established a strategic pricing framework by category. This allows us to offer quality across the value spectrum with competitive price points, while also protecting margins.

\* \* \*

As part of our pricing work, we have refocused our promotional strategy to move away from low margin revenue and toward more impactful targeted opportunities. We are now executing more targeted promotions and seeing favorable initial results.

97.    During her prepared remarks on the same call, Defendant Simmons acknowledged that "we will no longer chase sales at the expense of margin" and that, "for the full year, we expect overall net sales to be down low-single digits [compared] to last year[,]" without disclosing the impact such a shift in strategy would have on Petco's comparable sales.  Defendant Simmons further downplayed any potential impact to comparable sales by attributing the anticipated, low-single digit decline in overall Y/Y sales to the "clos[ure] 25 net locations in 2024" and the "clos[ure of] between 20 to 30 net locations" in 2025.

98.    During the Q&A portion of the call, a UBS analyst asked whether it was fair to interpret that "the message is, we are willing to sacrifice some sales and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

market share, at least in the short run to improve the profitability and establish the

foundation for the long-run"—which Defendant Anderson confirmed—and noted

that "[i]t looks like your guidance for this year is embedding an expectation that

your comp[arable sales] are flat to, to maybe slightly negative." Accordingly, the

UBS analyst questioned whether, "at some point, do you run the risk of touching

customer-facing activities that could result in, it be more challenging to return to

growth when that phase will occur?"  In response, Defendant Simmons stated, in

relevant part:

> We are absolutely customer-focused. And part of this whole foundation
> building that we're talking about in 2025, which is so critical before
> we, sort of turn even more of our focus to regrowth is really making
> sure that we are addressing our customer needs.
>
> * * *
>
> There are so many areas to go after that don't touch our customer with
> in no way harm our customer experience. That's our number one goal
> is to please our customer.

99.     In response to the same question, Defendant Anderson likewise

allayed concerns regarding an impact to comparable sales, stating, in relevant part:

> [D]on't look too far deep into that, because we shared with you we
> closed 25 stores last year. Most of those happened right at the end of
> the fourth quarter and then closing 20 to 30 this year, that right there
> just adds up to a couple of points of decline. And those were --
> obviously, we wouldn't be closing those stores if they were profitable.
> So a lot of the improved EBITDA comes just from removing some
> stores that were dragging us backwards. But I think, [Defendant
> Simmons], you outlined it perfectly.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

100.   Other analysts on the call also attempted to get a clearer picture of the impact that Defendants' shift in strategy would have on comparable sales, to little success.  For example, a Morgan Stanley analyst asked "if you can share what's implied comp[,]" "what does the industry do in [20]25, because it looks like it's growing slightly again[,]" and "if it ends up being better or what kind of assumptions that you're building in such that you can get comp to positive?"  In response, Defendant Anderson stated:

> Yeah. Look, our assumption on it is that we're not waiting for the industry to recover. This 2025 is a self-help year for Petco, and we can clearly deliver on what we shared with you today by driving internal, operational and profit improvements that are not dependent on the industry. So, like other things, [Defendant Simmons] shared, if the industry grows and we take our fair share, that's another tailwind for us.

101.   In response to the same question, Defendant Simmons stated:

> Yeah. And just to underscore that, with the guidance down low single digits on sales, that's a range. We're not counting on a positive comp to achieve our adjusted EBITDA guidance. But there again, if it comes and we welcome all customers, if it comes, great, it's just a tailwind.

102.   On March 31, 2025, Petco filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal Q4 and FY ended February 1, 2025 (the "2024 10-K").  The 2024 10-K stated, *inter alia*:

> [D]uring fiscal 2024, we continued to observe softening discretionary spending and shifts in consumer preferences for more value-centric products associated with the current inflationary environment,

34

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

macroeconomic and political uncertainty and increased competition. In response to this shifting demand, we have broadened our assortment to include more national brands, and implemented strategic pricing and promotional actions to offer more balanced price points in an effort to appeal to a broader base of consumers. In connection with these efforts, in late fiscal 2024 we also began efforts to optimize our assortment and store labor model, and take costs out of all areas of our business in an effort to enhance our profitability and drive performance.

103. Appended as exhibits to the 2024 10-K were substantively the same SOX certifications as referenced in ¶ 53, *supra*, signed by Defendants Anderson and Simmons.

104. The statements referenced in ¶¶ 94-103 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about Petco's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) they had downplayed the negative impact that their shift in strategy to focusing on profitability over sales would have on the Company's comparable sales metric; (ii) accordingly, Defendants overstated Petco's ability to deliver sustainable, profitable growth; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

## The Truth Continues to Emerge

105. On June 5, 2025, during after-market hours, Petco issued a press release announcing its financial results for the first quarter of its FY 2025 (the "Q1 2025 Press Release"), reporting, *inter alia*, net sales of $1.5 billion, representing a

35

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2.3% Y/Y decline, as well as a 1.3% Y/Y decline in comparable sales. Although the decline in net sales was in-line with market expectations, the decline in comparable sales was much larger than anticipated.

106.   For example, also on June 5, 2025, during after-market hours, *The Wall Street Journal* published an article entitled "Petco Same-Store Sales Miss Expectations Amid Sluggish Turnaround Efforts[,]" stating, in relevant part:

> Petco . . . posted a wider-than-expected loss in same-store sales for the first quarter as its turnaround plan continues to ramp up.
>
> The pet-products retailer said Thursday same-store sales declined 1.3%, compared with a 0.6% decline estimated by Wall Street. The drop was driven by fewer transactions despite Petco's efforts to boost foot traffic in its stores, management said.
>
> The miss comes as [Defendant] Anderson, who started last summer, aims to steer the company back to profitability. He wants to improve merchandise and capitalize on growth opportunities like in-store grooming and veterinarian services. Anderson told analysts on a call the fruits of his labor aren't yet visible in Petco's finances.

107.   Multiple analysts also expressed concerns with Petco's diminishing sales and market share in the wake of Defendants' profitability-focused turnaround plan. For example, an Evercore ISI analyst stated that the "next step of getting back to topline growth needs to follow soon, before share losses get too much to recover," while a Morgan Stanley analyst noted that "we think upside from here is shaped by comp acceleration and sustainable revenue growth, which is likely pushed out to at least [20]26[.]"

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

108.   Following the release of the Q1 2025 Press Release, Petco's stock price fell $0.84 per share, or 23.2%, to close at $2.78 per share on June 6, 2025.

109.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Regulation S-K Item 303

110.   Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants failed to disclose the true sustainability of Petco's pandemic-related tailwinds and its business model of selling primarily premium and/or high-grade pet food.  Defendants likewise failed to disclose, *inter alia*, the true scope and severity of the foregoing issues, the magnitude of changes needed to rectify those issues, and the likely negative impacts of their mitigation strategy on Petco's comparable sales metric.  Defendants' failure to disclose these issues violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SCIENTER ALLEGATIONS

111.   During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

112.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Petco securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

113.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Petco securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Petco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

114. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

115. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

116. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Petco;

39

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the Individual Defendants caused Petco to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Petco securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

117. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

118. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Petco securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Petco securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

119.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

120.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

121.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

122.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

123.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Petco securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Petco securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

124.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Petco securities.  Such reports, filings, releases and statements were materially false and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading in that they failed to disclose material adverse information and misrepresented the truth about Petco's finances and business prospects.

125.    By virtue of their positions at Petco, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.    Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.    In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

126.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.    As the senior managers and/or directors of Petco, the Individual Defendants had knowledge of the details of Petco's internal affairs.

127.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.    Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Petco.    As officers and/or directors of a

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Petco's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Petco securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Petco's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Petco securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

128.    During the Class Period, Petco securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Petco securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by Plaintiff and the Class, the true value of Petco securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Petco securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

129.  By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

130.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

131.  Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

132.  During the Class Period, the Individual Defendants participated in the operation and management of Petco, and conducted and participated, directly and indirectly, in the conduct of Petco's business affairs.  Because of their senior

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

positions, they knew the adverse non-public information about Petco's misstatement of income and expenses and false financial statements.

133.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Petco's financial condition and results of operations, and to correct promptly any public statements issued by Petco which had become materially false or misleading.

134.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Petco disseminated in the marketplace during the Class Period concerning Petco's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Petco to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Petco within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Petco securities.

135.   Each of the Individual Defendants, therefore, acted as a controlling person of Petco.  By reason of their senior management positions and/or being directors of Petco, each of the Individual Defendants had the power to direct the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

actions of, and exercised the same to cause, Petco to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Petco and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

136. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Petco.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  June 30, 2025                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS