**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
515 South Flower Street
18th and 19th Floors
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com

*Attorneys for Movant David Levin*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA SPURBECK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PETCO HEALTH AND WELLNESS COMPANY, INC., JOEL D. ANDERSON, R. MICHAEL MOHAN, RONALD V. COUGHLIN, JR., SABRINA SIMMONS, BRIAN LAROSE, and MICHAEL NUZZO,<br><br>Defendants. | No.: 3:25-cv-01667-JLS-VET<br><br>**DAVID LEVIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL**<br><br>Judge: Hon. Janis L. Sammartino<br>Date: October 9, 2025<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.................................................................................1

II.    ARGUMENT .....................................................................................................2

    A.    The PSLRA Process for Selecting a Lead Plaintiff....................................2

    B.    Mr. Levin Is the "Most Adequate" Lead Plaintiff......................................3

        1.    Mr. Levin's Possesses the "Largest Financial Interest". .....................3

        2.    Mr. Levin Satisfies Rule 23's Typicality and Adequacy Requirements .................................................................................6

    C.    No Movant Can Rebut the Strong Presumption in Favor of Appointing Mr. Levin as Lead Plaintiff. ...........................................................................8

III.    LEVI & KORSINSKY, LLP SHOULD BE APPROVED AS LEAD COUNSEL .........................................................................................................8

IV.    CONCLUSION ...................................................................................................9

## TABLE OF AUHTORITIES

**Cases**

*Abrams v. Intuitive Surgical, Inc.*,

No. 5:13-CV-01920-EJD, 2013 U.S. Dist. LEXIS 165873 (N.D. Cal. Nov. 18, 2013)................................................................................................3

*In re AudioEye, Inc. Sec. Litig*,

No. 15-cv-163, 2015 U.S. Dist. LEXIS 193348 (D. Ariz. Aug. 3, 2015) ..........6

*In re Cavanaugh*,

306 F.3d 726 (9th Cir. 2002)..................................................................3, 4, 7, 9

*Crawford v. Honig*,

37 F.3d 485 (9th Cir. 1994)..................................................................................8

*Doherty v. Pivotal Software, Inc.*,

No. 3:19-cv-03589- CRB, 2019 U.S. Dist. LEXIS 195360 (N.D. Cal. Nov. 8, 2019)....................................................................................................................2

*Dura Pharmaceuticals, Inc. v. Broudo*,

544 U.S. 336 (2005) ......................................................................................1, 4

*Espinoza v. Whiting*,

No. 4:12CV1711 SNLJ, 2013 U.S. Dist. LEXIS 6227

(E.D. Mo. Jan. 16, 2013)......................................................................................6

*Ferrari v. Gisch*,

225 F.R.D. 599 (C.D. Cal. 2004) ......................................................................7, 8

*Hall v. Medicis Pharm. Corp.*,

No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093 (D. Ariz. Mar. 10, 2009)....................................................................................................................7

*Hessefort v. Super Micro Comput., Inc.*,

317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..............................................................7

*Hufnagle v. Rino Int'l Corp.,*

No. CV 10-8695-VBFVBKX, 2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14, 2011), adopted, No. CV 10-1754-VBFVBKX, 2011 U.S. Dist. LEXIS 19760 (C.D. Cal. Feb. 16, 2011) ........................................................................10

*Metzler Investment GMBH v. Corinthian Colleges, Inc.,*

540 F.3d 1049 (9th Cir. 2008) ...................................................................4

*Perlmutter v. Intuitive Surgical, Inc.,*

No. 10-cv-03451, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) .....4

*In re Stitch Fix, Inc. Sec. Litig.,*

393 F. Supp. 3d 833 (N.D. Cal. 2019) ........................................................2

*Turpel v. Canopy Growth Corp.,*

704 F. Supp. 3d 456 (S.D.N.Y. 2023) .....................................................5, 7

**Statutes**

15 U.S.C. § 78u-4 ..........................................................................*passim*

## I.    PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to appoint a lead plaintiff in securities class actions asserting violations of the Securities Exchange Act of 1934. It instructs courts to appoint as lead plaintiff the movant with the largest financial interest in the litigation, so long as that movant satisfies the adequacy and typicality requirements under Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B). Under that directive, David Levin ("Mr. Levin") is the "most adequate plaintiff" because he is the movant with the largest financial interest and otherwise satisfies the typicality and adequacy prongs of the Federal Rules of Civil Procedure 23 ("Rule 23").

When assessing "financial interests," courts within the Ninth Circuit routinely examine "recoverable losses." As the Supreme Court explained in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005), the federal securities laws are not intended to provide market participants with broad form insurance against any and all losses but instead seek to compensate investors for damages causally related to the alleged misconduct. In line with *Dura Pharmaceuticals*, Mr. Levin stands to recover the most from this action and therefore possesses the "largest financial interest" in the outcome of the action.

Mr. Levin has also made a preliminary showing of the typicality and adequacy requirements of Rule 23, which is all that is required at this stage in the litigation. Mr. Levin is typical of the other class members insofar as he acquired Petco Health and Wellness Company, Inc. ("Petco" or the "Company") securities during the Class Period and was damaged as a result. Mr. Levin does not have any interests adverse to the class and he is ideally suited to serve as the lead plaintiff, given his professional experience as a chief executive of a publicly traded company and approximate 50 years of experience investing in the stock market. *See* ECF No. 12-1 at p. 12 (Mr. Levin's Opening Brief).

With the largest financial interest in the outcome of the Action and having

made the preliminary showing of typicality and adequacy, Mr. Levin is entitled to the presumption of being the "most adequate plaintiff". 15 U.S.C. § 78u-4(a)(3)(B). As the other movants cannot rebut this presumption with proof that Mr. Levin is somehow atypical or inadequate, he is entitled to be appointed as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, for these reasons, Mr. Levin respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    The PSLRA Process for Selecting a Lead Plaintiff

Under the PSLRA, this Court is directed to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

In interpreting the PSLRA, the Ninth Circuit formulated a clear process for selecting a lead plaintiff. *See Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 U.S. Dist. LEXIS 195360, at *12-13 (N.D. Cal. Nov. 8, 2019); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833 (N.D. Cal. 2019); *Abrams v. Intuitive Surgical, Inc.*, No. 5:13-CV-01920-EJD, 2013 U.S. Dist. LEXIS 165873, at *5 (N.D. Cal. Nov. 18, 2013) (citing *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002)). "[T]he courts must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements." *Id*. (citing *In re Cavanaugh*, 306 F.3d at 730). The movant with the largest financial interest that satisfies Rule 23 is the "presumptive lead plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730. "If the plaintiff

with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id*. Third, the court must then consider any competing lead plaintiff movants attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. *Id*.

### B. Mr. Levin Is the "Most Adequate" Lead Plaintiff.

#### 1. Mr. Levin's Possesses the "Largest Financial Interest".

The PSLRA provides a presumption that the "most adequate plaintiff" to serve as lead plaintiff is the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Mr. Levin is entitled to that presumption because, relative to the other movants, Mr. Levin's ***recoverable*** losses are greater than any other movant. The term "recoverable" losses stems from the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005)*.* In *Dura,* the Supreme Court held that losses on shares sold prior to any corrective disclosure are not recoverable. *See Dura*, 544 U.S. at 342 ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). In addition, should an investor sell shares at a lower price for a loss, prior to any corrective disclosure, "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* at 343; *see also Perlmutter v. Intuitive Surgical, Inc.,* No. 10-cv-03451, 2011 U.S. Dist. LEXIS 16813, at *18 (N.D. Cal. Feb. 15, 2011) ("[L]osses which occur prior to corrective disclosures are not caused by a defendant's misrepresentations and are, therefore, not recoverable."); *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (applying *Dura* to loss causation).

Using the analysis applied in *Dura* at this stage in the litigation is consistent with the PSLRA since "[o]ne's 'interest' in a litigation is rather directly tied to what one might recover." *Cavanaugh*, 306 F.3d at 730. To calculate what one might recover, courts "calculate[] by multiplying the number of shares each purchased […] ***by the per-share diminution in value after the alleged corrective disclosure*** (i.e., the pre-disclosure value per share, […] minus the post-disclosure value per share, […] as tabulated per the PSLRA's 90-day lookback provision)." *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 470 n.7 (S.D.N.Y. 2023) (emphasis added). "A review of damages methodology in securities-fraud cases involving publicly traded issuers underscores the vital distinction between an investor's overall investment losses and his recoverable losses. Cognizable damages in such cases are based on the drop in a stock's price occasioned by the revelation to the market of facts revealing the falsity of the issuer's earlier representations [...] Critically, in this process, ***it is the drop in share price occasioned by exposure of the fraud that is used to measure cognizable loss***. The seminal decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), explains why this must be so. " *Id.* at 466-67 (emphasis added).

The *Dura* calculation methodology was critical in *Canopy Growth Corp.*, *supra*, because the competing movants purchased their shares in the company at different points in the class period and at different levels of artificial inflation, *i.e.*, recoverable damages. Thus, for at least one of the movants, "almost all of the diminution in the market value of his Canopy shares occurred ***prior*** to the first date when any plaintiff alleges that Canopy Growth's alleged misconduct was disclosed, even in part," thereby greatly reducing the movant's "financial interest" in the action. *Turpel*, 704 F. Supp. 3d at 469. That precise dynamic exists in this case where both movant Richard Dumont and movants Marc Leventhal/Barbara Lanchart purchased shares earlier in the Class Period than Mr. Levin and therefore claim losses that are largely attributable to diminution in value occurring ***prior*** to

any corrective disclosures and/or stock drops causally related to the alleged fraud. Indeed, when calculating financial interest pursuant to *Dura Pharmaceuticals*, the competing movants should be ranked as follows:

| Movant | Net Shares Retained | Recoverable Losses |
|---|---|---|
| David Levin | 20,000 | $10,435 |
| Marc Leventhal & Barbara Lanchart | 13,200 | $6,887 |
| Richard Dumont | 8,923 | $4,655 |
| Sercan Mamakli | 1,500 | $1,095 |

*See* Supplemental Declaration of Adam M. Apton, Exhibit A (loss calculation chart).

"Under *Dura Pharmaceuticals, Inc. v. Broudo* . . . , a shareholder can claim the drop in share price as a result of the corrective news, but never more than that amount permitted under the PSLRA." *Espinoza v. Whiting*, No. 4:12CV1711 SNLJ, 2013 U.S. Dist. LEXIS 6227, at *7 (E.D. Mo. Jan. 16, 2013). Thus, as described above, a shareholder's financial interest in the litigation equals "the number of shares [purchased during the class period and retained as of the time of the corrective disclosure] times the price drop, and the statutory damage cap loss is equal to the number of shares multiplied by the difference between the purchase price and the ninety-day average price." *Id*. at *8. *See also In re AudioEye, Inc. Sec. Litig*, No. 15-cv-163, 2015 U.S. Dist. LEXIS 193348, at *12 (D. Ariz. Aug. 3, 2015) ("[T]he '*Dura* loss' method calculates the difference between the closing price immediately prior to the corrective disclosure and the closing price immediately thereafter."). ***This calculation excludes losses which occurred prior to the corrective disclosure***, because under *Dura*, "a shareholder can recover only what he lost ***as a result of disclosure of the false statement***." *Turpel*, 704 F. Supp. 3d at 470 (emphasis in original).

Mr. Levin lost nearly $4,000 more as compared to the next closest movant

group, Marc Leventhal and Barbara Lanchart. Courts in this Circuit have concluded that any financial difference is meaningful in determining a lead plaintiff. *See*, *e.g., Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) ("Neither has the Court found persuasive authority, nor have the parties provided any to the Court, suggesting that the Court should not determine that a plaintiff has largest financial share when its lead is small. To the contrary, courts in this circuit have concluded that any financial difference is meaningful in determining a lead plaintiff."); *Hall v. Medicis Pharm. Corp.*, No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093, at *19 (D. Ariz. Mar. 10, 2009) ("[T]he Court cannot rely on the fact that the difference between Steamfitters and Rand is only a few hundred dollars. Rand has a greater financial stake in the controversy, however minute that greater stake may be in relation to the overall damage claim."); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) ("Although the Massachusetts Group concludes that the 'de minimus' difference of $26,000 should not be conclusive on the financial interest determination, the Ninth Circuit has given no indication that courts are free to ignore the statutory presumption given to the plaintiff with the "largest financial interest in the relief sought by the class.") (citing *Cavanaugh*, 306 F.3d at 732). Accordingly, Mr. Levin has the largest financial interest in this matter.

### 2. Mr. Levin Satisfies Rule 23's Typicality and Adequacy Requirements

Not only does Mr. Levin possess the largest financial interest of all movants pursuant to the PSLRA and the most important prong of the widely accepted *Olsten/Lax* Factors, but he also satisfies the typicality and adequacy prongs of Rule 23, requiring his appointment as lead plaintiff.

Typicality exists where the claims of the representative parties "arise from the same event or practice or course of conduct that gives rise to the claims of the class members and are based on the same legal theory." *Ferrari*, 225 F.R.D. 599,

606 (internal quotations removed). Mr. Levin's claims are typical of those of other Class members because, like other Class members, he acquired Petco securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action. Moreover, Mr. Levin's claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.

To satisfy the adequacy requirement at this stage of the proceedings, Mr. Levin must make a preliminary showing that his interests are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between his interests and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted). Mr. Levin has no conflicts with other Class Members, nor is there evidence of any antagonism between Mr. Levin's interest and those of the Class.

Finally, Mr. Levin has further demonstrated his adequacy by providing his investing experience, employment, and education. *See* ECF No. 12-1 at p. 12 (Mr. Levin's Opening Brief). Mr. Levin resides in Ocean Ridge, Florida, and possesses a B.A. from the University of Iowa. *Id*. He is currently retired, but prior to that served as the CEO of Destination XL Group Inc., a clothing store specializing in apparel for big and tall men. *Id*. Mr. Levin has been investing in the stock market for approximately 50 years. *Id*. Further, in his certification, Mr. Levin states his familiarity with, and willingness to take on, the duties of a lead plaintiff and class representative under the PSLRA and Rule 23. *See* ECF No. 12-3 (PSLRA Certification).

Mr. Levin, therefore, is the movant for lead plaintiff that has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Accordingly, Mr. Levin is entitled to the presumption that he is the "most adequate plaintiff" and that he should be appointed as the lead plaintiff. 15 U.S.C § 78u-4(a)(3)(B)(iii)(II).

## C. No Movant Can Rebut the Strong Presumption in Favor of Appointing Mr. Levin as Lead Plaintiff.

By having timely filed a motion for appointment as the lead plaintiff, possessing the largest financial interest in the Action of all movants, and sufficiently making a preliminary, prima facie showing of typicality and adequacy, Mr. Levin has fulfilled the PSLRA's requirements to become the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (discussing requirements to become the "most adequate plaintiff"). Mr. Levin, therefore, is entitled to the presumption that he shall be appointed as the lead plaintiff in the Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (stating the court "shall appoint as the lead plaintiff" the "most adequate plaintiff"). Mr. Levin's presumption as the "most adequate plaintiff" may only be rebutted upon proof by a class member that Mr. Levin "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *Cavanaugh*, 306 F.3d at 741. Absent proof rebutting the presumption, Mr. Levin is entitled to be appointed as the lead plaintiff. *See Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBFVBKX, 2011 U.S. Dist. LEXIS 19771, at *16-26 (C.D. Cal. Feb. 14, 2011), adopted, No. CV 10-1754-VBFVBKX, 2011 U.S. Dist. LEXIS 19760 (C.D. Cal. Feb. 16, 2011) (appointing the most adequate plaintiff where competing movants failed to submit proof of unique defense). This is something that the other movants cannot do. Accordingly, Mr. Levin's motion should be granted in its entirety.

## III. LEVI & KORSINSKY, LLP SHOULD BE APPROVED AS LEAD COUNSEL

This Court should approve Mr. Levin's selection of Levi & Korsinsky as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). Numerous courts throughout the country have appointed Levi & Korsinsky as lead counsel in securities class

action lawsuits. *See* ECF No. 12-6. With approximately 30 attorneys across five different offices, including an office in this district, Levi & Korsinsky stands ready, willing and able to prosecute this case. *Id*.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Levin respectfully requests that the Court grant his Motion and enter an order: (1) appointing Movant as Lead Plaintiff; and (2) approving Levi & Korsinsky as Lead Counsel for the Class.

Dated: September 25, 2025                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ *Adam M. Apton*
Adam M. Apton (SBN 316506)
515 South Flower Street
18th and 19th Floors
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com

*Counsel for David Levin and [Proposed]*
*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby declare under penalty of perjury as follows:

I am a partner attorney at Levi & Korsinsky, LLP, with offices at 515 South Flower Street, 18th and 19th Floors, Los Angeles, CA 90071. I am over the age of eighteen.

On September 25, 2025, I electronically filed the following **DAVID LEVIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on September 25, 2025.

/s/ Adam M. Apton
Adam M. Apton