**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Marc Leventhal and*
*Barbara Lanchart*

*- additional counsel on signature page -*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA SPURBECK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PETCO HEALTH AND WELLNESS COMPANY, INC., JOEL D. ANDERSON, R. MICHAEL MOHAN, RONALD V. COUGHLIN, JR., SABRINA SIMMONS, BRIAN LAROSE, and MICHAEL NUZZO,<br><br>Defendants. | No.  3:25-cv-01667-JLS-VET<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF MARC LEVENTHAL AND BARBARA LANCHART FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS**<br><br>DATE:    October 9, 2025<br>TIME:    1:30 p.m.<br>JUDGE:   Janis L. Sammartino<br>CTRM:    4D (4th Floor) |

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................1

II.   ARGUMENT......................................................................................................6

    A.    LEVENTHAL AND LANCHART SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ......................................................................6

        1.    Leventhal and Lanchart Have the "Largest Financial Interest" ..............6

        2.    Leventhal and Lanchart Satisfy Rule 23's Applicable Requirements.....7

    B.    LEVENTHAL AND LANCHART'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................13

    C.    THE COMPETING MOTIONS SHOULD BE DENIED ..........................13

        1.    No Eligible Competing Movant Has Alleged a Larger Financial Interest Than Leventhal and Lanchart ......................................................13

        2.    Dumont Is Subject to Disqualifying Unique Defenses..........................14

III.   CONCLUSION................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...............................................................................5, 17, 18

*Borteanu v. Nikola Corporation*,
562 F. Supp. 3d 174 (D. Ariz. 2021) .........................................................11

*Bruce v. Suntech Power Holdings Co.*,
No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) .............4, 10, 11

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018)..............................................................................4, 10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012).....................2, 7

*Harari v. PriceSmart, Inc.*,
No. 19-CV-958 JLS (LL), 2019 WL 4934277 (S.D. Cal. Oct. 7, 2019).....................9

*Howard v. Liquidity Servs.*,
322 F.R.D. 103 (D.D.C. 2017) .................................................................17

*In re 21st Century Holding Co. Sec. Litig.*,
No. 07-61057-CIV, 2007 WL 9220955 (S.D. Fla. Nov. 20, 2007)...........................14

*In re Bally Total Fitness Sec. Litig.*,
No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005)........................................14

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*,
No. 09-MD-2058, 2011 WL 3211472 (S.D.N.Y. 2011) ..................................5, 15, 16

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ........................................................................6, 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..........................................................................10

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001)...........................................................17, 18

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ....................................................................................3, 9

*In re Netflix, Inc., Sec. Litig.*,
No. 12-0225 SC, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)...........................14, 19

*In re Snap Inc. Sec. Litig.*,
No. 217CV03679SVWAGR, 2019 WL 2223800
(C.D. Cal. Apr. 1, 2019) ....................................................................................3, 9, 10

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ..........4, 14, 19

*Karinski v. Stamps.com, Inc.*,
No. CV 19-1828-R, 2019 WL 8013753 (C.D. Cal. June 5, 2019) ............................3, 8

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................2, 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................................15

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...............................7

*Osher v. Guess?, Inc.*,
No. CV01-00871LGB(RNBX), 2001 WL 861694
(C.D. Cal. Apr. 26, 2001) .......................................................................................13

*Perrin v. Sw. Water Co.*,
No. 208CV7844FMCAGRX, 2009 WL 10654690
(C.D. Cal. Feb. 13, 2009)........................................................................................10

*Peters v. Colony Credit Real Estate, Inc.*,
No. CV 20-8305 PSG, 2020 WL 11884392 (C.D. Cal. Dec. 11, 2020) ....................11

*Pino v. Cardone Cap., LLC*,
No. 2:20-CV-08499-JFW (KSX), 2020 WL 7585839
(C.D. Cal. Dec. 18, 2020) .................................................................................4, 14, 18

*Richardson v. TVIA, Inc.*,
No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .......................7

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

iii

*Robb v. Fitbit Inc.*,
 No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ..........................9

*Sabbagh v. Cell Therapeutics, Inc.*,
 No. C10-414MJP, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ..........................11

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)..............................................................................................15

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
 454 U.S. 464 (1982)..............................................................................................15

*Vataj v. Johnson*,
 No. 19-CV-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ......................2, 8

**Statutes**

15 U.S.C. § 78u-4.........................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .......................................................*passim*

Securities Exchange Act of 1934 .............................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .................................................................................................*passim*

Movants Leventhal[1] and Lanchart respectfully submit this Memorandum of Points and Authorities in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 14); and in opposition to the competing motions of: (i) Richard Dumont ("Dumont") (Dkt. No. 11); and (ii) David Levin ("Levin") (Dkt. No. 12).[2]

## I.    PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Petco securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant or group of movants with the largest financial interest in the outcome of the Action that *also* satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are Leventhal and Lanchart, who claim a collective loss of approximately $187,531 in connection with Class Period transactions in Petco securities. *See* Dkt. No. 14-2 at *9.  Although the PSLRA does not define "financial interest," courts in the Ninth Circuit recognize that the amount of financial loss is the most significant

---

[1] All capitalized terms herein are defined in Leventhal and Lanchart's moving brief, unless otherwise indicated.  *See* Dkt. No. 14-1.

[2] Initially, one other putative Class member, Sercan Mamakli ("Mamakli"), filed a similar competing motion.  *See* Dkt. No. 13.  On September 4, 2025, Mamakli filed a notice stating his non-opposition to the competing motions, acknowledging that he "appears to lack the largest financial interest of the lead plaintiff movants[.]"  Dkt. No. 15 at *2.

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

1

factor to be considered. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163-65 (C.D. Cal. 2015) (emphasizing approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) (same). The table below sets forth the respective claimed losses of the competing movants:

| Movant | Loss |
|---|---|
| Leventhal and Lanchart | $187,531 |
| Levin | $99,828 |
| ~~Dumont~~ | ~~$244,429~~ |

As the above table reflects, Leventhal and Lanchart's $187,531 loss is nearly twice as large as the $99,828 loss that Levin, the only other eligible competing movant, claims. Although another competing movant, Dumont, claims a larger loss than Leventhal and Lanchart, Dumont is ineligible for appointment as lead plaintiff because the unusual timing of his purchases of Petco stock subjects him to various disqualifying unique defenses, as discussed in detail below. Accordingly, Leventhal and Lanchart possess the largest financial interest in this litigation of any eligible movant.

In addition to their significant financial interest, Leventhal and Lanchart also satisfy the typicality and adequacy requirements of Rule 23. Leventhal and Lanchart's claims in this Action are based on the same legal theory and arise from the same events and course of conduct as the claims of other Class members. *See Vataj v. Johnson*, No. 19-CV-06996-

HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).  Leventhal and Lanchart are aware of no conflict between their interests and those of the Class, their losses incurred as a result of the Defendants' alleged fraud gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, and in Pomerantz, Leventhal and Lanchart have retained qualified and experienced counsel.  *See Karinski v. Stamps.com, Inc.*, No. CV 19-1828-R, 2019 WL 8013753, at *1 (C.D. Cal. June 5, 2019).

Further demonstrating their adequacy, Leventhal and Lanchart have submitted a detailed Joint Declaration attesting to, *inter alia*, their respective backgrounds and investment experience, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, a meaningful explanation of their reasons for joining together, and their readiness to collaboratively shoulder the responsibilities of a lead plaintiff under the PSLRA, including by overseeing the efforts of counsel.  *See* Dkt. No. 14-2 at *32-37 ¶¶ 1-7, 9-13.  As such, they constitute exactly the kind of small and cohesive group that the PSLRA expressly permits and courts in the Ninth Circuit routinely appoint to serve as lead plaintiffs in securities class actions.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ("[T]he most adequate plaintiff . . . is the person *or group* of persons that . . . has the largest financial interest in the relief sought by the class[.]" (Emphasis added.)); *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (holding "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff); *In re Snap Inc. Sec. Litig.*,

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

3

No. 217CV03679SVWAGR, 2019 WL 2223800, at *4 (C.D. Cal. Apr. 1, 2019) (appointing as lead plaintiff a group of five investors that "submitted a joint declaration, which establishes the members' commitment to vigorously pursue the litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interests, to work collaboratively, and to proceed quickly"); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (same); *see also China Agritech v. Michael H. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups[.]").

In stark contrast, Dumont, the only competing movant claiming a larger loss than Leventhal and Lanchart, is subject to various disqualifying unique defenses and thus ineligible for appointment as lead plaintiff, irrespective of his financial interest in this Action. *See In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (denying motion for lead plaintiff appointment upon finding "at least a ***potential*** that [movant] will be subject to unique defenses" (emphasis added)); *Pino v. Cardone Cap., LLC*, No. 2:20-CV-08499-JFW (KSX), 2020 WL 7585839, at *6 (C.D. Cal. Dec. 18, 2020) (same).

Here, the fact that Dumont's ***only*** Class Period transactions in Petco securities occurred on January 14, 2021 (*see* Dkt. No. 11-4 at *4), the ***first*** day of the Class Period (*see* Dkt. No. 1 ¶ 1), subjects him to various disqualifying unique defenses with respect to his standing to pursue fraud claims in this Action, as well as his purported reliance on

Defendants' statements in connection with the alleged fraud. Specifically, if for *any* reason the start of the Class Period in this Action is shortened by *just a single day*, Dumont will not have engaged in a purchase or sale during the relevant period when the misconduct allegedly occurred, in which case he will lack standing to bring fraud claims under Section 10(b) of the Exchange Act. *See In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at *12-14 (S.D.N.Y. 2011).

Similarly, if the Court finds that the Defendants' alleged misstatements that preceded Dumont's purchases are inactionable for *any* reason, Dumont will be unable to show that he relied upon Defendants' statements in purchasing Petco securities at artificially inflated prices. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 248 (1988) (holding that "*[a]ny* showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance"). The fact that *all* of Dumont's Class Period transactions in Petco securities occurred on the first day of the Class Period means that he can only claim to have relied on Defendants' statements that preceded his trading on that particular date. If the Court deems such statements inactionable, Dumont will obviously be unable to show that any of his Petco shares were purchased on reliance of Defendants' fraudulent statements.

For the reasons set forth herein, Leventhal and Lanchart respectfully submit that the Court should grant their motion in its entirety and deny the competing motions.

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

5

## II.   ARGUMENT

### A.   LEVENTHAL AND LANCHART SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Movants with the largest financial interest need only make a *prima facie* showing at this stage that they satisfy the typicality and adequacy requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate representatives for the Class are Leventhal and Lanchart.

### 1.   Leventhal and Lanchart Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person *or group* of persons that . . . has the largest financial interest in the relief sought by the class[.]" *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Ninth Circuit recognize that the amount of financial loss is the most significant factor to be considered. *See Knox*, 136 F. Supp. 3d at 1163 (finding "'approximate losses suffered'" is the most determinative measure of largest financial interest within the meaning of the PSLRA

(quoting *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at \*4 (N.D. Cal. Apr. 16, 2007))); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at \*4 (N.D. Cal. Mar. 4, 2013) ("The weight of authority puts the most emphasis on the competing movants' estimated losses[.]"); *Juniper Networks*, 2012 WL 78780, at \*4 (finding "[c]ourts . . . generally place the greatest emphasis on the" approximate losses suffered during the class period, and assessing financial interest on that basis).

Under the foregoing analysis, no competing movant eligible for appointment as Lead Plaintiff in this Action has a larger financial interest in this litigation than Leventhal and Lanchart. As the chart at p. 2 reflects, Leventhal and Lanchart claim a loss of approximately $187,531 in connection with Class Period transactions in Petco securities— nearly twice as large as that claimed by Levin ($99,828), the only other eligible competing movant. Although one competing movant, Dumont, claims a larger loss than Leventhal and Lanchart, Dumont is subject to various disqualifying unique defenses, and is thus ineligible for appointment as Lead Plaintiff irrespective of his financial interest, as discussed in detail *infra* at Section II.C.2. Accordingly, Leventhal and Lanchart clearly possess the largest financial interest in this Action of any eligible competing movant within the meaning of the PSLRA.

### 2. Leventhal and Lanchart Satisfy Rule 23's Applicable Requirements

In addition to possessing the largest financial interest in the outcome of this litigation—and thus being the statutorily presumed "most adequate" plaintiffs (15 U.S.C.

§ 78u-4(a)(3)(B)(iii)(I)(bb))—Leventhal and Lanchart have made the requisite *prima facie* showing that they satisfy Rule 23's typicality and adequacy requirements.   *See Cavanaugh*, 306 F.3d at 730-31.

Leventhal and Lanchart satisfy the typicality requirement of Rule 23(a)(3) because their claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Vataj*, 2020 WL 532981, at *3. Leventhal and Lanchart allege, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Petco, or by omitting to state material facts necessary to make the statements they did make not misleading.  Leventhal and Lanchart, like other Class members, purchased Petco securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Petco's share price downward.  These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).  *See Vataj*, 2020 WL 532981, at *3.

Likewise, Leventhal and Lanchart satisfy the adequacy requirement of Rule 23(a)(4) because their interests are aligned with those of the Class, they are incentivized to prosecute this litigation vigorously on behalf of the Class, and they have retained counsel for the Class that is qualified and competent.  *See Karinski*, 2019 WL 8013753, at

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

*1; *Harari v. PriceSmart, Inc.*, No. 19-CV-958 JLS (LL), 2019 WL 4934277, at *3 (S.D. Cal. Oct. 7, 2019).  Here, there is no evidence of antagonism or conflict between Leventhal and Lanchart's interests and those of the Class, their significant loss gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, they have submitted sworn Certifications declaring their commitment to protect the interests of the Class (*see* Dkt. No. 14-2 at *24-25, *28-29), and in Pomerantz, Leventhal and Lanchart have retained counsel that is highly experienced in vigorously and efficiently prosecuting securities class actions like this Action (*see id.* at *39-49).

Further, Leventhal and Lanchart are a cohesive duo of likeminded investors who each claim a significant loss in connection with Class Period transactions in Petco securities.  They therefore constitute an appropriate movant pair of the type expressly permitted by the PSLRA and routinely appointed to serve as co-lead plaintiffs in PSLRA actions in the Ninth Circuit.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ("[T]he most adequate plaintiff . . . is the person ***or group*** of persons that . . . has the largest financial interest in the relief sought by the class[.]" (Emphasis added.)); *Mersho*, 6 F.4th at 899 (holding "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *7 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff); *Snap*, 2019 WL 2223800, at *4 (appointing as lead plaintiff a group of five investors that "submitted a joint declaration, which establishes the members' commitment to vigorously pursue the

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

9

litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interests, to work collaboratively, and to proceed quickly"); *Suntech*, 2012 WL 5927985, at *3 (appointing as lead plaintiff a group of three investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class"); *Perrin v. Sw. Water Co.*, No. 208CV7844FMCAGRX, 2009 WL 10654690, at *3 (C.D. Cal. Feb. 13, 2009) ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).  Indeed, in *China Agritech*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups[.]"  584 U.S. at 742 n.3.

Moreover, courts in the Ninth Circuit routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via a detailed Joint Declaration.  *See, e.g.*, *Snap*, 2019 WL 2223800, at *4 (appointing five-person investor group that "has submitted a joint declaration, which establishes the members' commitment to vigorously pursue the litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interests, to work collaboratively, and to proceed quickly"); *Perrin*, 2009 WL 10654690, at *3-4 (appointing group of four investors that "submitted a

Joint Declaration agreeing to work together to ensure the maximum recovery on behalf of the proposed class" (internal quotations omitted)); *Suntech*, 2012 WL 5927985, at *3 (appointing group of three investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class"); *Peters v. Colony Credit Real Estate, Inc.*, No. CV 20-8305 PSG (PVCx), 2020 WL 11884392, at *4 (C.D. Cal. Dec. 11, 2020) (appointing group that submitted a "Joint Declaration detail[ing] their participation in a conference call with one another prior to filing this motion, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take cooperatively to prosecute this litigation on behalf of the putative class"); *Borteanu v. Nikola Corporation*, 562 F. Supp. 3d 174, 187 (D. Ariz. 2021) (same); *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010) (same).

Here, Leventhal and Lanchart have submitted a detailed Joint Declaration in which they, *inter alia*:

- Provide detailed information about themselves, including their respective professional backgrounds, investment experience, ages, and cities and states of residence (*see* Dkt. No. 14-2 at *32 ¶¶ 2-3);

- Explain their reasons for seeking appointment jointly as co-lead plaintiffs (*see id.* at *34 ¶ 9) ("We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experience*** by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations pleaded in

the complaint, and consulting with each other and our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and experience, as well as our ability to engage in joint decision-making, will materially benefit and advance the interests of the Class*** in this case." (Emphases added.));

- Attest in detail to their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to undertake those responsibilities (*see id.* at \*32-35 ¶¶ 4-7, 10-13); and

- Attest to their communication with one another prior to the filing of their motion (*see id.* at \*32-33 ¶ 4) ("We have discussed this case ***with each other*** and an attorney from Pomerantz . . . . We participated in a conference call ***with each other*** and an attorney from Pomerantz to discuss this litigation, have one another's contact information, and approved the filing of a motion on our behalves seeking appointment jointly as Co-Lead Plaintiffs." (Emphases added.)).

\*\*\*\*\*

Because Leventhal and Lanchart have the largest financial interest in the relief sought by the Class of any eligible movant seeking appointment as Lead Plaintiff, and otherwise satisfy Rule 23's applicable requirements, they are the presumptive "most adequate" plaintiffs of the Class within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To overcome the strong presumption entitling Leventhal and Lanchart to appointment as Co-Lead Plaintiffs, the PSLRA requires "***proof***" that they are inadequate. *Id.* § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

12

## B.   LEVENTHAL AND LANCHART'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should interfere with a lead plaintiff's selection only when necessary to "protect the interests of the class[.]"  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001) ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class." (Internal quotations omitted.)).

Here, Leventhal and Lanchart have selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions, and the firm has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 14-2 at *39-49.  Thus, the Court may be assured that by approving Leventhal and Lanchart's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## C.   THE COMPETING MOTIONS SHOULD BE DENIED

### 1.   No Eligible Competing Movant Has Alleged a Larger Financial Interest Than Leventhal and Lanchart

Apart from Leventhal and Lanchart, the only other eligible competing movant for appointment as Lead Plaintiff in this Action is Levin, whose $99,828 loss is dwarfed by

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

Leventhal and Lanchart's loss of $187,531.  This fact alone mandates denial of Levin's motion.

### 2.   Dumont Is Subject to Disqualifying Unique Defenses

The fact that Dumont's **only** Class Period transactions in Petco securities occurred on the very first day of the Class Period subjects him to disqualifying unique defenses with respect to his standing to pursue fraud claims in this Action, as well as his purported reliance on Defendants' statements in connection with the alleged fraud.  The PSLRA precludes the appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005); *see also Surebeam*, 2004 WL 5159061, at *7 (denying motion upon finding "at least a **potential** that [movant] will be subject to unique defenses" (emphasis added)); *Pino*, 2020 WL 7585839, at *6 ("[T]he **probability** that [movant] will face this defense alone justifies denying his motion for appointment as co-lead plaintiff." (Emphasis added.)); *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, **only to show a degree of likelihood** that a unique defense **might** play a significant role at trial." (Emphases added.)); *In re 21st Century Holding Co. Sec. Litig.*,

No. 07-61057-CIV, 2007 WL 9220955, at *4 (S.D. Fla. Nov. 20, 2007) (disqualifying movant where "it is ***possible*** to arrive at a determination that" movant "would be subject to a unique defense" (emphasis added)).

"[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury[.]'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). In a securities fraud class action under Section 10(b) of the Exchange Act, like this Action, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue and engaged in a purchase or sale ***during the relevant period*** when the misconduct allegedly occurred (*i.e.*, during the Class Period). *See Bank of America*, 2011 WL 3211472, at *12-14 (noting Article III standing in securities fraud actions requires beneficial ownership in the securities at issue and a purchase or sale of those securities ***during the relevant period***).

Here, the Class Period in this Action, as currently alleged in the initial Complaint, runs from January 14, 2021 to June 5, 2025, both dates inclusive. *See* Dkt. No. 1 ¶ 1. Dumont's ***only*** Class Period transactions in Petco securities occurred on January 14, 2021—*i.e.*, the first day of the Class Period. *See* Dkt. No. 11-4 at *4. Accordingly, if for ***any*** reason the start of the Class Period in this Action is shortened by ***just a single day***,

Dumont will not have engaged in a purchase or sale during the relevant period during which misconduct allegedly occurred, in which case Dumont will lack standing to bring fraud claims against Defendants under Section 10(b) of the Exchange Act. *See Bank of America*, 2011 WL 3211472, at \*12-14.

The foregoing risk is not merely hypothetical. In a securities fraud class action, like this Action, the class period alleged in the initial complaint is highly subject to change because the initial complaint is customarily superseded by an amended complaint shortly after the Court's appointment of lead plaintiff and lead counsel. Indeed, the parties in the Action have already alluded to as much in requesting that Defendants' time to respond to the initial Complaint be deferred. *See* Dkt. No. 5 at 2-3 (stipulating that "[w]ithin fourteen (14) days of the appointment of a lead plaintiff and lead counsel, counsel for lead plaintiff and counsel for Defendants will meet and confer and submit a proposed schedule to the Court for the filing of the amended complaint and Defendants' response"). Moreover, because the class period in a securities fraud class action is determined by the period during which defendants' fraud allegedly occurred—*i.e.*, when defendants are alleged to have issued materially false and misleading statements that harmed Class members—the start of the Class Period can be shortened for any number of reasons. Such reasons may include, *inter alia*, a determination (whether by the Court or plaintiff's counsel) that Defendants' statements did not actually inflate the subject securities on the date(s) in question, were not materially false and misleading, were accompanied by sufficiently

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

16

counteracting risk disclosure statements, or are otherwise inactionable. As such, entrusting the Class's claims to an investor whose standing depends entirely on the inclusion of a single day in the Class Period places the Class in a highly precarious position.

Moreover, if, at a later stage in the litigation, the Court determines for any reason that Defendants' statements impacting Petco shares purchased on January 14, 2021 are inactionable, Dumont will likewise be subject to reliance-based disqualifying unique defenses because he only purchased shares on ***that*** date. "The fraud-on-the-market theory, the premise of which is that the market price accurately reflects publicly available information, is central to securities actions." *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001). As one court has explained:

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted) (alterations in original).

In *Basic*, the Supreme Court held that "***[a]ny*** showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[]

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

will be sufficient to rebut the presumption of reliance." 485 U.S. at 248 (emphasis added). In that case, which involved news of a corporate merger, the Supreme Court stated, for example, that a plaintiff who was aware of the truth of the merger discussions "but sold his shares nevertheless because of other unrelated concerns . . . *could not be said to have relied on the integrity of a price he knew had been manipulated*." *Id.* at 249 (emphasis added). Accordingly, "the class is not served by its representative coming under . . . scrutiny" for whether it "was actually relying on the [company's] market price[.]" *Critical Path*, 156 F. Supp. 2d at 1110.

The fact that *all* of Dumont's Class Period purchases of Petco securities occurred on the first day of the Class Period (*see* Dkt. No. 11-4 at *4) means that he can only claim to have relied on Defendants' statements impacting shares traded on *that* date in claiming that he purchased Petco securities at artificially inflated prices as a result of Defendants' alleged fraud. Accordingly, if the Court finds Defendants' statements that preceded Dumont's purchases are inactionable, for any reason, Dumont will be unable to show that he relied on Defendants' statements in purchasing Petco securities at artificially inflated prices. *See Basic*, 485 U.S. at 248 (holding that "*[a]ny* showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance").

The mere "*probability* that D[umont] will face [a unique] defense alone justifies denying his motion for appointment as []lead plaintiff." *Pino*, 2020 WL 7585839, at *6

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

18

(emphasis added); *see also Surebeam*, 2004 WL 5159061, at \*7 (denying motion upon finding "at least a ***potential*** that [movant] will be subject to unique defenses" (emphasis added)); *Netflix*, 2012 WL 1496171, at \*5 ("There is no requirement at this early stage to prove a defense, only to show ***a degree of likelihood*** that a unique defense ***might*** play a significant role at trial. The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." (Emphases added and internal citations omitted.)).  There is simply no reason to saddle the Class with such a representative at the outset of this litigation when perfectly capable lead plaintiff candidates—Leventhal and Lanchart—who are not subject to the same issues as Dumont, stand ready and willing to represent the Class's claims, and otherwise satisfy the applicable requirements for appointment as lead plaintiffs pursuant to the PSLRA.

## III.    CONCLUSION

For the foregoing reasons, Leventhal and Lanchart respectfully request that the Court issue an Order: (1) appointing Leventhal and Lanchart as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated:  September 25, 2025                              Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

Telephone: (310) 405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Marc Leventhal and Barbara Lanchart and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Marc Leventhal*

MEMORANDUM OF POINTS AND AUTHORITIES - 3:25-cv-01667-JLS-VET

20

CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti